*In re* VAUGHAN.

1. HABEAS CORPUS—RELEASE ON DETAINER—PAROLE.
    Record in habeas corpus proceeding in which accompanying cer-
    tiorari showed petitioner was released from imprisonment in
    this State on detainer by St. Louis, Missouri, officers *held*, to
    show incontrovertibly that petitioner had been paroled.

2. PARDON—VIOLATION OF PAROLE—STATUTES—HEARING—CONFRON-
    TATION OF WITNESSES.
    A paroled prisoner who is accused of a violation of his parole is
        subject to protective provisions of statute entitling him to a
        fair and impartial hearing of such charges before 2 members
        of the parole board and to meet the witnesses who are produced
        against him (CLS 1956, § 791.240).

3. SAME—VIOLATION OF PAROLE—CONFRONTATION OF WITNESSES.
    The parole board's finding of guilt of parole violation by habeas
        corpus petitioner is set aside, where at the statutorily ac-
        corded hearing he was not afforded the opportunity of meeting
        the witnesses produced against him (CLS 1956, § 791.240).

4. SAME—VIOLATION OF PAROLE—OMISSION TO REPORT TO PAROLE
    OFFICER.
    Habeas corpus petitioner who has been reimprisoned as a parole
        violator following release from prison in Missouri pursuant to

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur, Habeas Corpus § 66.
Parolee's right to habeas corpus. 148 ALR 1243; 92 ALR2d 682.
[2] 39 Am Jur, Pardon, Reprieve and Amnesty § 95.
Right to notice and hearing before revocation of suspension of
    sentence, parole, conditional pardon, or probation. 29 ALR
    2d 1074.
[3] 25 Am Jur, Habeas Corpus § 66.
39 Am Jur, Pardon, Reprieve and Amnesty § 95.
Parolee's right to habeas corpus. 148 ALR 1243; 92 ALR2d 682.
Right to notice and hearing before revocation of suspension
    of sentence, parole, conditional pardon, or probation. 29 ALR
    2d 1074.
[4] 25 Am Jur, Habeas Corpus § 66.
39 Am Jur, Pardon, Reprieve and Amnesty §§ 81-95.
Parolee's right to habeas corpus. 148 ALR 1243; 92 ALR2d 682.
[5] 39 Am Jur, Pardon, Reprieve and Amnesty §§ 94, 95.

a parole plan there of which the Michigan officers had been made aware, *held*, to have been excused from reporting to Michigan parole officers and not shown, because of such omission to report, to have not complied with terms of Michigan parole under which he had been released on parole on detainer by St. Louis, Missouri, officers.

5. SAME—VIOLATION OF PAROLE—RESTORATION TO STATUS AS PAROLEE.

Parolee who is not shown to have violated terms of Michigan parole *held*, entitled to discharge from confinement in this State for alleged parole violations in Missouri and restoration of parole status, where period of parole has not yet expired.

Habeas corpus by Woodrow J. Vaughan against the Warden of State Prison of Southern Michigan, with ancillary writ of certiorari to the Director of the Department of Corrections, to test legality of incarceration as parole violator. Submitted June 28, 1963. (Calendar No. 33, Docket No. 50,356.) Petition granted and prisoner ordered discharged from custody November 4, 1963.

*Woodrow J. Vaughan, in propria persona.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George Mason,* Assistant Attorney General, for the people.

O'HARA, J. Petitioner under sentence for robbery armed, was serving a 5–20 year sentence in the State branch prison at Marquette. His confinement followed a plea of guilty in recorder's court in the city of Detroit in January, 1956. Upon the expiration of his minimum sentence April 10, 1959, he appeared before the Michigan parole board. His case was continued for further review in January, 1961. The following excerpts from the departmental files show the of-record disposition of his case.

"January 16, 1961 Heard by the parole board and following order entered: 'Parole 4 yrs. 2–19–61 to St. Louis detainer only.'

"February 15, 1961 Released on parole with following special conditions: 'Subject is being released to the chief of police, St. Louis, Missouri. This parole is null and void if not called for by the chief of police, St. Louis, Missouri. If and when I am released by the chief of police, St. Louis, Missouri, I agree to communicate immediately with the bureau of pardons & paroles, 212 Stevens T. Mason building, Lansing, Michigan. Also, unless otherwise instructed, I am to report in person to the parole officer named on this certificate.' "

What does not appear of record in the above chronology is the event of February 8, 1961, and we set it forth herewith:

"WAIVER OF EXTRADITION

"State of Michigan—County of Marquette—ss. I, Woodrow Jennings Vaughan, now in custody, having been informed by the judge before whom this waiver is executed, of my rights to demand the issuance and service of a warrant of extradition and to apply for a writ of habeas corpus against my present detention, do hereby waive the issuance and service of all extradition proceedings and freely and voluntarily agree to return (go) to the State of Missouri accompanied by a peace officer thereof, for the purpose of answering a criminal charge there pending against me.

"/s/ WOODROW JENNINGS VAUGHAN
"WOODROW JENNINGS VAUGHAN

"Subscribed to in my presence this 8th day of February, A.D. 1961

"/s/ MICHAEL F. DEFANT
"Judge of the Probate Court Marquette County, Michigan."

Petitioner was thereafter released on the 19th of February, 1961, to custody of Missouri police.

On June 5, 1961, following arraignment and a plea of guilty in the circuit court, St. Louis, Missouri, he was sentenced to 2 years for robbery. On June 8, 1962, he was released from the Missouri State penitentiary.

The precise circumstances of this release on parole are not made clear. The records of the department of corrections of Michigan record the following entry:

"June 8, 1962 Discharged from Missouri State penitentiary to continue in Michigan parole status."

It is apparent that Michigan knew he was to be released because on June 5, 1962, the Missouri division of probation and parole acknowledged a request by this State for investigation. In response, the Missouri parole plan, including his employment possibilities, was forwarded to the Michigan authorities. There was also sent to Michigan petitioner's "arrival report" showing he reported to the Missouri probation and parole board on June 12, 1962, four days after his release. From then on petitioner apparently lived with his brother and sister-in-law in St. Louis until September 16, 1962.

On October 3, 1962, Michigan issued a parole violation warrant and transmitted it to Missouri. On October 8, 1962, petitioner was taken into custody apparently by Michigan officers and returned to this State and reconfined in the State prison at Jackson. He demanded a formal hearing upon his alleged parole violation and asked for a specification of the charges against him. They were enumerated as follows. That he:

(1) Changed place of residence without permission;

(2) Associated with a prostitute;

' (3) Possessed or associated with a person possessing narcotic drugs;

· (4) Failed to keep his parole officer informed of his whereabouts. .

His hearing was held in Lansing on November 8, 1962. At the opening of the hearing, petitioner repeated on the record what he had previously communicated to the board:

"I will need these people [witnesses] to prove the alleged violations are not true. Please advise how I should go about bringing them to Michigan [from St. Louis]. * * *

"*Mr. Trudall* [board member]: Mr. Maynard, do you wish to make any comment?

"*Mr. Maynard* [assistant attorney general]: Well, the statute provides that when we have a formal hearing that the defendant shall furnish his own counsel but the State shall assist him in bringing his witnesses.

"*Mr. Trudall* [board member]: As I understand it then, Mr. Vaughan, you are contending that your witnesses are available and that it is the obligation of the State to pay for their transportation to a hearing of this nature?

"*Mr. Vaughan*: Yes sir."

The board, indicating some uncertainty, adjourned the matter to a "further date in the near future." On November 23, 1962, the hearing was resumed with the assistant attorney general and petitioner both present. The board made what was presumably its ruling on the point for which adjournment was taken:

"*Mr. Trudall* [board member]: Inasmuch as we are posed at this time, with a situation wherein the alleging authority of parole violation is far distant and the witnesses for the defense are equally far distant, we are constrained to work with the ma-

terial we have at hand.  *  *  *  Now Mr. Attorney. General, how do you propose to proceed?  *  *  *

"*Mr. Maynard* [assistant attorney general]: Well, about the only thing we can proceed with is the report of Mr. Frank Niccoli  *  *  *  [of the Missouri parole board], which concerns the conduct of the parolee while he was on parole in the State of Missouri."

What was subsequently introduced as "evidence" is judicially shocking, and bears no resemblance to admissible testimony.  It consisted of letters, reports, opinions and conclusions that the accused had absolutely no means of refuting.  Most of it was not only hearsay as to record itself, but hearsay as to the authors of the letters and reports.  If it proved anything, it might have established that petitioner would not have been acceptable to the more exclusive St. Louis country clubs.

Petitioner made as valiant a defense as possible. Among other things, he testified to the receipt of a reply from the records office of the branch prison to his report of his whereabouts that read: "The parole board knows where you're at  *  *  *  We don't want you back here—just keep your nose clean —Good Luck."

So much for the factual background and the chronology of events.  Petitioner claims: That when he was surrendered to the Missouri authorities with a waiver of extradition he was not "paroled" but surrendered absolutely to the State of Missouri, and that Michigan lost jurisdiction of him.

He contends that had he been released under the interstate compact act (CL 1948, § 798.101 [Stat Ann 1954 Rev § 28.1361]) no extradition was necessary, citing subdivision 3 of the compact:

"All legal requirements to obtain extradition or fugitives from justice are hereby expressly waived."

We believe it clear that with or without extradition, paroled "in custody" or not (CLS 1956, § 791-.238 [Stat Ann 1954 Rev § 28.2308]) he was incontrovertibly paroled. He was accused by Michigan of violating his parole in a manner other than by conviction for felony or misdemeanor under the laws of this State. When this occurred he became subject to the protective provision of CLS 1956, § 791.240 (Stat Ann 1954 Rev § 28.2310):

"Whenever a paroled prisoner is accused of a violation of his parole, other than the commission of, and conviction for, a felony or misdemeanor under the laws of this State, he shall be entitled to a fair and impartial hearing of such charges within 30 days before 2 members of the parole board under such rules and regulations as the parole board may adopt. Upon such hearing such paroled prisoner shall be allowed to be heard by counsel of his own choice at his own expense and may defend himself, and he shall have the right to produce witnesses and proofs in his favor *and to meet the witnesses who are produced against him.*" (Emphasis supplied.)

By no construction of the phrase known to the law, was petitioner afforded the opportunity to "meet the witnesses produced against him." Failure to accord him this statutorily guaranteed right rendered the proceedings before the Michigan parole board a nullity, and the finding by the board that petitioner was guilty of his parole violation is set aside.

We turn now to present the status of petitioner in the light of the foregoing. The abstract of the Michigan parole board's records attached to and made a part of the attorney general's return to the petition for habeas corpus and certiorari contains these entries as previously noted:

" 'Parole 4 yrs. 2–19–61 to St. Louis detainer only.'
"Released on parole with following special conditions: 'Subject is being released to the chief of police, St. Louis, Missouri. This parole is null and void if not called for by the chief of police, St. Louis, Missouri.' "

This condition was fulfilled when he was delivered to the Missouri officers. The parole thereafter continued in effect, subject to the following proviso:

" 'If and when I am released by the chief of police, St. Louis, Missouri, I agree to communicate immediately with the bureau of pardons & paroles, 212 Stevens T. Mason building, Lansing, Michigan. Also, unless otherwise instructed, I am to report in person to the parole officer named on this certificate.' "

When petitioner was "released" by the chief of police of Missouri, he was "released" to 2 years' imprisonment in Missouri, a fact which was communicated to the bureau of pardons and paroles of this State according to its own records. The condition of communication was therefore fulfilled. The rest of the special condition was to report "to the parole officer named on this certificate."

As we noted previously, Michigan had foreknowledge of his impending release. It had received a detailed report of the proposed Missouri "parole plan." It contemplated petitioner living in St. Louis with his brother and sister-in-law. Had Michigan not approved it, ample time was afforded to advise petitioner and the Missouri authorities. Failure so to do certainly excused petitioner from any further reporting to Michigan at that time.

No conditions of his parole having been violated, it must be considered that petitioner as of the day of his release and thereafter until his arrest and return to Michigan in October, 1962, was in compliance

with the terms of his parole. By reason of our vacation of the finding of alleged parole violations in Missouri, it follows inescapably that petitioner's legal status now is that of being on parole under the Michigan parole order of February 19, 1961, to run for 4 years. This being so, it is obvious that petitioner's present detention and confinement is illegal. He is entitled to release in his status as a parolee—a condition to which he was entitled from the effective date of the order of February 19, 1961.

A memorandum brief of the attorney general filed in response to petitioner's application for habeas corpus cites only *In re Dawsett,* 311 Mich 588. The holding is inapplicable here and the case need not be discussed.

Petitioner will be discharged from custody as on parole under the order of February 19, 1961.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ., concurred.