CRAWFORD *v.* MICHIGAN PAROLE BOARD

OPINION OF THE COURT

1. PARDON AND PAROLE—PAROLE REVOCATION—HEARING—PAROLEE'S RIGHTS—CONFRONTATION AND PRODUCTION OF WITNESSES.

A person accused of parole violation is entitled to a fair and impartial hearing in which he has the right to be confronted with the witnesses against him and to produce witnesses and evidence on his own behalf; the alleged parole violator has these rights even if his hearing occurred between the time the statute setting forth fair hearing standards was repealed and the time hearing standards were adopted by the Director of the Department of Correction (MCLA §§ 791.240, 791.240a; Dept. of Corrections Rule 32[4]).

DISSENT BY O'HARA, J.

2. PARDON AND PAROLE—PAROLE REVOCATION—UNLAWFUL POSSESSION OF HANDGUN—REASON.

*Revocation of parole was proper where the ground for the revocation was the unlawful possession of a handgun and the parolee stated that he saw the gun on the floor of a store . and picked it up, because, even assuming the truth of the parolee's story, the parolee admitted having the gun and the reason for his having the gun is not relevant.*

---

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 39 Am Jur, Pardon, Reprieve, and Amnesty § 95.

3. PARDON AND PAROLE—PAROLE REVOCATION HEARING—DUE PROCESS —WAIVER OF RIGHTS.

> Parole revocation hearing procedure did not violate due process where the violator was advised of his right to counsel and to an adjournment, he non-coercively and understandingly chose to proceed, and he admitted a ground upon which revocation could validly be based; due process does not deny an alleged violator the right to admit his violation (MCLA § 791.240).

Original action for mandamus in the Court of Appeals. Submitted Division 2 May 6, 1971, at Lansing. (Docket No. 9514.) Decided July 26, 1971.

Complaint by Homer Crawford against the Department of Corrections, Parole Board, for a writ of mandamus to compel the defendant to release him from custody. Remanded to the Parole Board for a new hearing.

*Milton R. Henry,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Solicitor General, for defendant.

Before: McGREGOR, P. J., and BRONSON and O'HARA,* JJ.

BRONSON, J. Plaintiff seeks a writ of mandamus from this Court ordering defendant to release him from custody. In July, 1966, plaintiff was sentenced to a prison term of 3-1/2 to 15 years for the crime of armed robbery. In October, 1968, plaintiff was paroled from prison. On October 22, 1969, plaintiff was arrested for unlawful possession of a handgun.[1]

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Defense counsel on appeal informs us through his brief that this charge was dismissed by an examining magistrate principally because

Later, defendant charged plaintiff with parole violation on two counts: (1) possession of a weapon and (2) conducting himself in such a manner as to put himself and others in peril.[2]

A parole revocation hearing was held on March 2, 1970. Plaintiff appeared without counsel.[3] The hearing consisted chiefly of the board's asking of plaintiff whether the charges were true. Only plaintiff's testimony was taken. We quote the following relevant portions of the transcript:

*"Mr. Buchko:* So that if he and I had taken action today continuing you, then it's too late for you to ask for a public hearing, all right. I'll read the two charges to you. The first one says:
'In that you had in your possession on October 22, 1969, a firearm, Titon, .25-caliber, blue steel automatic, serial #A–08167, revolver'.

*"Mr. Buchko:* Is that charge correct?

"A. Well sir, I'll tell you the truth. In a way it is correct, and in a way it isn't. Because at that present time when I come in to a drug store, it's just natural for a man to walk in someplace and see something that's real small like a kid's toy and he would pick it up from off the floor, you know, to keep from stepping on it or something. I think any man would do that if he would walk in his house and pick, and see one of the kids' toys on the floor, he would pick it up. And I reached down and picked it up and was going to lay it on the counter and it

the handgun was obtaining by an illegal search and statements of plaintiff made at the time of arrest could not be used in light of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

2 The substance of this second charge was that plaintiff endangered himself and others by dropping the pistol in a drugstore. This charge was not substantiated at the hearing. Plaintiff denied dropping the gun and claimed that he stumbled upon it while in the store.

3 The Department of Corrections had unsuccessfully attempted to contact plaintiff's attorney prior to the date of the hearing. At the hearing, the Parole Board again informed plaintiff of his right to retain counsel and offered to adjourn so as to permit plaintiff to obtain an attorney. Plaintiff agreed to proceed that day.

happened to be a real gun, and of course when I picked it up it's in my possession.

"*Mr. Buchko:* Well, was there a cop right there or not.

"*A.* No there was another man standing there. And I said look at this, you know, and I showed it to him, and he went and called the officer. And I had done—

"*Mr. Buchko:* And you stayed right there.

"*A.* Yes sir. I had done ordered my prescription to be filled and everything so I couldn't leave.

"*Mr. Buchko:* Nobody was holding you.

"*A.* No.

"*Mr. Buchko:* Nobody was holding a gun, they weren't holding you at all.

"*A.* No sir.

"*Mr. Buchko:* All right.

"*A.* I didn't have the gun concealed or anything.

"*Mr. Buchko:* Okay, then the next count says: 'In that on October 22, 1969, by dropping a gun, you acted in such a manner as to be a hazard to both yourself and the person of another at the Arnold Drug Store, 2540 N. Woodward, Bloomfield'.

"*Mr. Buchko:* So they're saying in effect that you had the gun and that you dropped it.

"*A.* I did not drop the gun. Maybe the other man had dropped it. But I didn't, I did not drop the gun."

As indicated by plaintiff's testimony, this is not a case wherein the alleged parole violation is uncontested. Granted, plaintiff's story seems implausible; nevertheless, if proven to be true we doubt that parole revocation would be proper under the circumstances. The record below, while sketchy,[4]

---

[4] The hearing was extremely brief; its transcript is but five pages. As noted above, no evidence of the charges was adduced. The board merely relied upon what it had been told and thereupon interrogated plaintiff as to its verity. In *In re Vaughn* (1963), 371 Mich 386, the use of hearsay at a parole revocation hearing is categorized as "judicially shocking". Under the former hearing statute, the fact that the parolee admits the violations as true does not relieve the

indicates plaintiff had no real opportunity to cross-examine those who leveled the charges at him or to bring forth affirmative rebuttal proof in his own behalf.

Under the former statute, MCLA § 791.240 (Stat Ann 1954 Rev § 28.2310), the parolee had a right to a fair and impartial hearing at which the prisoner could confront his accusers and to show evidence in his favor. However, this legislation has been superseded by MCLA 1971 Cum Supp § 791.240a (Stat Ann 1971 Cum Supp § 28.2310[1]); this later statute is that applicable to plaintiff's hearing. It reads:

"Within 30 days after a paroled prisoner has been returned to a state penal institution under accusation of a violation of his parole, other than the conviction for a felony or misdemeanor punishable by imprisonment in any jail, a state or federal prison under the laws of this state, the United States or any other state or territory of the United States, he shall be entitled to a hearing on such charges before 2 members of the parole board. Hearings shall be conducted in accordance with rules and regulations adopted by the director, and the accused prisoner shall be given an opportunity to appear personally or with counsel and answer to the charges placed against him."

As can be readily observed, the statutory rights to confrontation and to production of favorable proof have seemingly been eliminated. This is not altogether true.[5]

---

board of the necessity of a hearing. See *Stewart* v. *Department of Corrections, Parole Board* (1969), 382 Mich 474.

[5] The later legislation provides that the director shall make rules by which parole revocation hearings may be conducted. Rule 32(4) of the department, R 791.332(4), Michigan Administrative Code, Supplement 63, adopts the form prescribed by the Administrative Procedure Act, MCLA 1971 Cum Supp § 24.201 *et seq.* (Stat Ann 1971 Cum Supp § 3.560 [101] *et seq.*), for conducting such hearings. Section 72 of the act, MCLA 1971 Cum Supp § 24.272 (Stat Ann 1971 Cum Supp § 3.560 [172]), permits one to present oral and writ-

As such, we are presented with a substantially similar situation as was focused upon by this Court in *Feazel* v. *Department of Corrections* (1971), 31 Mich App 425. There, a parole revocation hearing consisted of the board's asking of the parolee whether the charges presented were true. The parolee in that case was afforded no opportunity to confront witnesses or to counter the charges with contrary proof. After correctly distinguishing *Lane* v. *Department of Corrections, Parole Board* (1970) 383 Mich 50,[6] the Court went on to say:

"The present statute does not spell out the right of the parolee to produce witnesses and proofs, but it does provide for a hearing. It is the opinion of this Court that a hearing necessarily comprehends the right of the accused to produce witnesses and proofs and to meet the witnesses who are produced against him. We are of the opinion that any proceeding which does not provide for the production of witnesses and the introduction of evidence would not be a hearing at all." (p 431.)

Nor is it significant that plaintiff's hearing took place between the time the fair hearing standard of MCLA § 791.240 (Stat Ann 1954 Rev § 28.2310), and the effective date of the present regulations. This was settled by *Feazel* v. *Department of Corrections*, supra. There, the Court noted, at p 432:

---

ten arguments of law, to produce favorable evidence, to cross-examine witnesses, and to submit rebuttal proof. Thus, all the safeguards of the former statute, MCLA § 791.240 (Stat Ann 1954 Rev § 28.2310), have been preserved by administrative rule. Rule 32(4) was not filed with the Secretary of State, however, until May 28, 1970, and this hearing was held on March 2, 1970.

[6] *Lane* was advanced as standing for the thesis that the excision of the fair hearing, confrontation, and evidence language in the new legislation was tantamount to extinguishing the rights of the parolee to introduce evidence. This Court in *Feazel* properly noted that *Lane* involved the question of whether a parole could be extended without a hearing and the Supreme Court never reached the issue of what is the minimum necessary for a hearing.

"Although we are of the opinion that the plaintiff was denied a 'hearing' within the meaning of MCLA § 791.240a, we are also of the opinion that just because this particular parolee was accused of a parole violation between the time MCLA § 791.240 was repealed and the present regulations governing the hearing were adopted, that he should not be denied the opportunity to introduce proofs and present witnesses."

This cause is remanded to the Parole Board for a hearing consistent with the new procedures outlined by the director of the Department of Corrections. Reversed and remanded.

McGREGOR, P. J., concurred.


O'HARA, J. (*dissenting*). I cannot agree with my colleagues.

Petitioner was sentenced for armed robbery. The violation of the parole with which he was charged was unlawful possession of a handgun.

Assuming *arguendo* that his explanation that he stumbled upon the pistol in the store is true in fact, he picked it up at his peril. I agree with the argument advanced by the Attorney General that when he saw it, his duty was to shun it like the plague at all costs. I can see a possible reason for a parolee having a handgun if he wrested it from an assailant, or participated in preventing an illegal act by another. Other than this, his admitted possession of the weapon is analogous to the class of crimes which are *malum prohibitum*. The reason for having the gun is not to the point. He had it. It was not forced upon him. As the state contended on oral presentation, if he did see it on the floor of the store he should have left it there, advised the management of that fact, or "called a cop".

As far as the due process argument is concerned, I know of no case precedent that denies an alleged parole violator the right to admit his violation. The majority concedes that petitioner was advised of his right to counsel and was advised of his right to an adjournment. He chose to proceed. He admitted his unlawful possession of the handgun. He gave his explanation. The parole board was unconvinced. Where is the denial of due process? How does this offend against cited *Vaughn*? *Vaughn* was a contested hearing. The alleged violations were denied. I wrote to the point in *Vaughn* that under these circumstances proof of the denied violations could not be supplied by hearsay and compounded hearsay, and I designated the whole proceeding as "shocking". I do not retreat an inch from that position. But I do not read *Vaughn* to mean that a parolee who has been offered all his constitutional and statutory prerogatives and protections, and non-coercively and understandingly waives them, is on reconsideration entitled to a new full-dress hearing.

I would affirm the parole board.